1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON SMITH,

 Plaintiff,

 v.

M. ZAVALA, et al.,

 Defendants.

Case No. 21-cv-03426 BLF (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT PROCEEDINGS; STAYING CASE; INSTRUCTIONS TO CLERK**

(Docket Nos. 15, 27)

Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF"). Dkt No. 1.[1]  The Court found the complaint stated cognizable claims: (1) for excessive force under the Eighth Amendment against Defendant Correctional Officer M. Zavala; and (2) for retaliation under the First Amendment against Defendants Zavala, Lt. J. Reed, and Acting Chief Deputy Warden K. Mensing.  Dkt No. 4.  Plaintiff filed his notice to strike his remaining, non-cognizable claims in lieu of amending the complaint.  Dkt No. 5.  The Court accordingly struck Plaintiff's non-cognizable claims, and ordered Defendants to file

---

[1]  All page references herein are to the Docket pages shown in the header to each document and brief cited, unless otherwise indicated.

a motion for summary judgment or other dispositive motion on the cognizable claims.  Dkt No. 6.

Defendants filed a motion for summary judgment on various grounds.  Dkt No. 15.[2]
Plaintiff filed opposition, Dkt No. 21, Defendants replied, Dkt No. 26, and Plaintiff requested permission to file a sur-reply, Dkt No. 27.  Plaintiff attached his proposed sur-reply to his request.  *Id*. at 5 (referencing Dkt No. 27-1).

For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.

## DISCUSSION

### I.    Statement of Facts[3]

Plaintiff is an inmate housed in the C-Wing at CTF, where the underlying events took place.  Dkt No. 1 at 7; Dkt No. 15 at 11.  Plaintiff names three prison officials at CTF as Defendants: Zavala, Reed, and Mensing.

### A.    Defendant Zavala

Plaintiff alleges that Defendant Correctional Officer Zavala used excessive force in restraining Plaintiff during an encounter on August 26, 2020.  Dkt No. 1 at 10, 14; Dkt No. 4 at 2-3.  Defendant Zavala thereafter filed a Rules Violation Report ("RVR") against Plaintiff based on this incident.  Dkt No. 15-7 at 4.  Plaintiff alleges that the RVR was false, and that Defendant Zavala's use of excessive force and filing of an allegedly false RVR were motivated by retaliatory animus for Plaintiff's pursuit of a lawsuit against Defendant Zavala.  Dkt No. 1 at 14, 15; Dkt No. 4 at 3.  The lawsuit in question is filed in this Court as *Smith v. Mendoza, et al.*, Case No. 19-cv-03750-BLF [the "'3750 lawsuit"].[4]

---

[2]  Defendants filed a notice of Errata, Dkt No. 25, substituting two signed Declarations in place of unsigned Declarations appended to their Motion.

[3]  The following facts are not disputed unless otherwise stated.

[4]  Defendant Zavala does not deny knowledge of the '3750 lawsuit.  Dkt No. 15-3.

United States District Court
Northern District of California

Two other persons witnessed at least some of the interaction between Plaintiff and Defendant Zavala: (1) Prison Librarian M. Martinez, who accompanied Defendant Zavala to Plaintiff's cell, Dkt No.15-6 at 2; and (2) James Jones, an inmate who observed the outside of Plaintiff's cell, from his own cell in the C-Wing at CTF. Dkt No. 21-2 at 2. Each of these four individuals (Plaintiff, Defendant Zavala, Martinez, and Jones) has a somewhat different account of what occurred. Their differing narratives conflict in ways that create factual issues material to the resolution of Plaintiff's claims against Defendant Zavala. These material factual issues lead the Court to conclude that Defendant Zavala's motion for summary judgment should be denied.

The reason prompting Defendant Zavala and Martinez to visit Plaintiff's cell was that Plaintiff had submitted a request for Priority Legal User (PLU) status because he had an approaching deadline in the '3750 lawsuit. Dkt No. 15-6 at 2 ¶ 4. Martinez wanted to query Plaintiff about his PLU request, and so Defendant Zavala accompanied Martinez to Plaintiff's cell. *Id.*

Plaintiff was not wearing a face mask when Defendant Zavala and Martinez arrived at Plaintiff's cell.[5] Dkt No. 15-3 at 2 ¶ 4; Dkt No. 15-8 at 7-8; Dkt No. 21-2 at ¶ 7. As Defendant Zavala opened the door to enter Plaintiff's cell, Defendant Zavala directed Plaintiff to put on his mask. Dkt No. 15-3 at 2 ¶ 4; Dkt No. 15-6 at 2 ¶ 4. Plaintiff complied with Defendant Zavala's direction to mask, albeit Defendant Zavala declares that Plaintiff turned around with clenched fists and made mumbled comments. Dkt No. 15-3 at

According to the Court's own record in the '3750 lawsuit, Defendant Zavala and her co-defendants in that lawsuit had filed various pleadings in the '3750 lawsuit prior to August 26, 2020, including a motion for summary judgment filed on June 19, 2020 ('3750 lawsuit, Dkt No. 23), and a motion to stay discovery filed on July 22, 2020 (*id*. Dkt No. 29). The latter motion asserts that Defendant Zavala had already responded to some of Plaintiff's discovery requests in the '3750 lawsuit (*id*. at 3). It is clear from the pleadings filed on the Court's docket of the '3750 lawsuit that Defendant Zavala was aware of Plaintiff's claims against her in the '3750 lawsuit, as of August 26, 2020.

[5] According to Plaintiff, inmates were not required to wear a face mask while alone in their cells, but were required to mask if a visitor arrived, or if the cell door was opened. Dkt No. 15-8 at 7-8.

United States District Court
Northern District of California

United States District Court
Northern District of California

2 ¶ 5.  Defendant Zavala and Martinez both declare that Plaintiff took a stance with his left hand clenched in a fist and his right hand pointed at Defendant Zavala, telling Martinez that "'I need this paperwork done!  It's actually for this bitch right here!'"  Dkt No. 15-3 at 2 ¶ 5; Dkt No. 15-6 at 2 ¶ 4.  Defendant Zavala and Martinez both describe Plaintiff's behavior as aggressive.  Dkt No. 15-3 at 2 ¶ 5; Dkt No. 15-6 at 2 ¶¶ 4-6.

Plaintiff denies making the statement as described by Defendant Zavala and Martinez, and also denies aggressive behavior, clenched fist, and mumbling.  Dkt No. 15-8 at 8-9; Dkt No. 21-2 at 2-3 ¶ 8.  Plaintiff does acknowledge referencing his lawsuit against Defendant Zavala.  In Plaintiff's version, he was responding to Martinez's query asking about the Court-ordered deadline for which Plaintiff sought PLU access.  Dkt No. 1 at 9 ¶ 9.  In response, Plaintiff told Martinez he had a Court-ordered deadline "'… in the case of Smith v. Mendoza, for which Zavala is a defendant[.]'"  Dkt No. 1 at 9 ¶ 10; Dkt No. 21-2 at 2 ¶ 8.

Plaintiff maintains Defendant Zavala became agitated and precluded him from giving Martinez his PLU application.  Dkt No. 1 at 10 ¶ 12; Dkt No. 21 at 4; Dkt No. 21-2 at 6 ¶ 23.  According to Plaintiff, Defendant Zavala said "'he's not passing anything, you can leave, I'm going to put his a** in a holding cell.'"[6]  Dkt No. 1 at 10 ¶ 12.  Plaintiff testified he was holding a folder he had prepared for the librarian that contained his only copy of a Court order in the '3750 lawsuit, and he attempted to give the folder to Martinez.  Dkt No. 15-8 at 6, 9; Dkt No. 21-2 at 67.  Neither Defendant Zavala nor Martinez mention a folder, or the PLU application, in their recounting of these events.  Dkt No. 15-3; Dkt No. 15-6.  Martinez declares that Defendant Zavala told Plaintiff his disrespectful and aggressive behavior would no longer be tolerated.  Dkt No. 15-6 at 2 ¶ 6.

Defendant Zavala ordered Plaintiff to step outside the cell.  Dkt No.15-8 at 9; Dkt

---

[6]  In his deposition testimony, Plaintiff gave a similar version of Defendant Zavala's comment, "'… he's not passing nothing.  I'm going to put him in the cage.'"  Dkt No. 15-8 at 9; Dkt No. 21-2 at 67.

4

No. 21-2 at 67.  Plaintiff, Defendant Zavala, and Martinez all agree that Plaintiff complied with Defendant Zavala's direction to submit to handcuffs.  Dkt No. 15-3 at 2 ¶ 5; Dkt No. 15-6 at 2 ¶ 7; Dkt No. 15-8 at 9; Dkt No. 21-2 at 67.

It is at this juncture that Jones enters the record as a witness,[7] creating a dispute as to Martinez's continued presence on the scene.  Jones saw what occurred outside Plaintiff's cell door from his own cell in the C-Wing, albeit Jones could not hear what was said.  Dkt No. 21-1 at 2 ¶¶ 2-3.  Jones declares that Plaintiff was holding a yellow folder when Plaintiff stepped outside his cell, and that Plaintiff attempted to give the folder to Martinez, but Martinez did not accept it.[8]  *Id.* at ¶¶ 4-5.

There is disagreement about whether Martinez stayed to witness what happened after this point.  According to Plaintiff, Defendant Zavala told Martinez to leave, and Martinez walked away and did not turn around.  Dkt No.15-8 at 11; Dkt No. 21-2 at 6 ¶ 23, 72.  Martinez, however, describes watching as Defendant Zavala handcuffed Smith and performed a clothed-body search.  Dkt No.15-6 at 2 ¶ 7.  Martinez declares she followed as Defendant Zavala escorted Smith to the holding cell, and observed and heard the entire transportation process.  *Id*.  Jones, in turn, directly contradicts Martinez.  Jones maintains

---

[7]  Plaintiff submitted Jones's declaration with Plaintiff's response brief.  Dkt No. 21-1. Jones was subsequently deposed on August 12, 2022.  Dkt No. 27-1 at 2.  The deposition was taken before Defendants filed their reply brief, on August 24, 2022.  Dkt No. 26. Defendants' reply brief addresses Jones's declaration, Dkt No. 26 at 2, 3 (referencing Dkt No. 21-1), but does not mention Jones's deposition.  In his application for permission to file a sur-reply, Plaintiff has asked to enter Jones's deposition transcript into the record. Dkt No. 27.  In the interests of judicial economy, and in light of the fact that Jones's deposition testimony was available to Defendants before they filed their reply brief, the Court has reviewed Jones's deposition transcript.  Jones's deposition testimony, Dkt No. 27-1, does not materially affect the Court's analysis.  The Court will grant Plaintiff's application to file the sur-reply.

[8]  Defendants argue there is an inconsistency between Plaintiff's account and Jones's account regarding the sequence of the attempted hand-off of the folder, as to whether Plaintiff tried to give Martinez the folder before or after he was ordered against the wall. Dkt No. 26 at 3.  Defendants' assertion does not materially affect this analysis, especially because Jones's own stipulation is that he could see, but not hear, what took place.  Dkt No. 21-1 at 2 ¶¶ 2-3.

United States District Court
Northern District of California

Martinez walked away from Plaintiff and Defendant Zavala, toward the C-Wing entrance. Dkt No. 21-1 at 2 ¶ 6.  According to Jones, Martinez was not there to witness Defendant Zavala restraining Plaintiff, and Defendant Zavala was alone when she escorted Plaintiff to the holding cell.[9]  *Id.* at 2-3 ¶¶ 6-7.

Plaintiff declares that Defendant Zavala lunged her elbow in his back prior to handcuffing him, made the handcuffs extremely tight, and unnecessarily jerked his hands in an upward motion during the transit to the holding cell.  Dkt No. 1 at 10 ¶¶ 13, 15; Dkt No. 21-2 at 3 ¶¶ 8-10.  Plaintiff says Defendant Zavala answered his complaints with "'this is what you get for filing lawsuits!'"  Dkt. No. 1 at 10 ¶ 16; Dkt No. 21-2 at 3 ¶ 10. Defendant Zavala denies each of these allegations.  Dkt No.15-3 at 2 ¶¶ 5-7.  Martinez declares that Defendant Zavala neither jerked Plaintiff's hands, nor commented on Plaintiff's lawsuit.  Dkt No.15-6 at 2 ¶ 7.  As noted, however, Martinez's presence during this exchange is disputed by both Plaintiff and Jones.[10]  Jones declares he witnessed Defendant Zavala elbowing Plaintiff in the back.[11]  Dkt No. 21-2 at 2 ¶ 6.

Plaintiff maintains that Defendant Zavala made Plaintiff wait 10-15 minutes and then personally escorted Plaintiff to the holding cell, instead of calling escort guards, because Defendant Zavala wanted to thereby inflict additional harm and injuries on Plaintiff.  Dkt No. 1 at 10 ¶¶ 14, 15; Dkt No. 21-2 at 3 ¶ 9.  The alleged additional harm and injuries consisted of repeatedly and intentionally jerking Plaintiff's hands in an upward

---

[9]  Defendant Zavala has not made any representation regarding Martinez's continued presence, or departure, after their initial arrival at Plaintiff's cell.  Dkt No.15-3 at 2-3.  In their reply brief, Defendants do not address how or whether Jones's declaration casts doubt on Martinez's declaration.  Dkt. No. 26 at 2, 5.  Defendants maintain that Martinez's declaration is credible.  *Id.* at 5.

[10]  Plaintiff claims Martinez had walked away at Defendant Zavala's direction.  Dkt No.15-8 at 11; Dkt No. 21-2 at 6 ¶ 23, 72.  Jones maintains that Martinez was already gone when Jones saw Defendant Zavala elbowing Plaintiff in his back.  Dkt No. 21-1 at 2 ¶ 6.

[11]  Jones gives additional description of Defendant Zavala's use of force in the deposition testimony submitted with Plaintiff's sur-reply.  Dkt No. 27-1 at 8-12.

1    motion.  Dkt No. 1 at 10 ¶ 15; Dkt No. 21-2 at 3 ¶ 10.

2         Defendants submit, and Plaintiff does not dispute, that Plaintiff's injuries as a result

3    of Defendant Zavala's restraint consisted of pain in Plaintiff's right shoulder and redness

4    to Plaintiff's upper left back and wrists.  Dkt No. 15-2 at 9; Dkt No.15-7 at 2, 28; Dkt No.

5    21-2 at 4 ¶ 14, 35-46.[12]  Defendants argue that these are minor injuries and that Plaintiff

6    experienced no objective or tangible injury that would provide a basis for the pain claimed

7    by Plaintiff.  Dkt No. 15 at 12; Dkt No. 26 at 5.

8         Defendant Zavala filed an RVR against Plaintiff the same day, August 26, 2020.[13]

9    Dkt No. 15-7 at 4.  The RVR sets forth Defendant Zavala's description of events,

10   consistent with the declaration she has provided in this lawsuit.[14]  Id.  Plaintiff alleges that

11   Defendant Zavala made false statements in the RVR, including Defendant Zavala's version

12   of Plaintiff's initial remarks at the cell.  Dkt No. 1 at 11 ¶ 19.  The Specific Act reported by

13   Defendant Zavala on the RVR was "Disrespect with Potential for Violence/Disruption."

14   Dkt No. 15-7 at 4.

15        **B.    Defendant Reed**

16        Defendant Zavala's RVR against Plaintiff was assigned to Defendant Hearing

17

18   ─────────────────────

     [12]  Plaintiff also alleges a mental health consultation following these events.  Dkt No. 21-2
19   at 4 ¶ 13.

20   [13]  Plaintiff maintains that Defendant Zavala has a pattern of making false and retaliatory
     RVRs against inmates who file grievances or lawsuits against her.  Dkt No. 21-2 at 4-5 ¶
21   15.  Plaintiff submits an RVR that Defendant Zavala purportedly filed on February 4,
     2020, against an inmate named Anthony Oliver.  Id. at 48.  Defendant Zavala's description
22   of Oliver's rules violation, id., has some similarities with Defendant Zavala's description
     of Plaintiff's rules violation, Dkt No. 15-7 at 4.  In both cases, Defendant Zavala reported
23   the inmate in question as having made a threatening reference to a pending lawsuit, then
     making a fist and taking a posture which Defendant Zavala interpreted as predatory (in
24   Oliver's case) or aggressive (in Plaintiff's case), and which in turn led Defendant Zavala to
     file an RVR.  Defendants do not address this allegation in their reply.  Dkt No. 26.

25   [14]  Martinez's Supplemental Report in the record of the RVR is also consistent with the
26   declaration Martinez has provided here.  Dkt No. 15-7 at 8.  Likewise, Plaintiff's telling of
     events in the RVR record is consistent with his representations in this lawsuit.  Dkt No. 15-
27   7 at 13-16.

28                                              7

Officer Reed for resolution.  There is a dispute between Plaintiff and Defendant Reed regarding whether Defendant Reed stated to Plaintiff at the September 30, 2020 hearing that Defendant Reed would "'have to find you guilty of something,'" because of Plaintiff's "'602 against Zavala.'"[15]  Dkt No. 1 at 12 ¶ 23; Dkt No. 21-2 at 7 ¶ 28.  Defendant Reed denies making such a statement.  Dkt No. 15-5 at 3 ¶ 10.

Defendant Reed denies being aware of Plaintiff's grievance against Defendant Zavala.  *Id.* at 3 ¶ 14.  Both Defendant Reed and Defendant Zavala deny speaking with each other about the grievance.  Dkt No. 15-5 at 3 ¶ 14; Dkt No. 15-3 at 3 ¶ 9.  Plaintiff offers no evidentiary support for his allegation that Defendant Reed knew of the grievance.[16]  Plaintiff further alleges that events allegedly related to Defendant Reed's postponement of the hearing on the RVR are evidence that Defendant Reed acted improperly in making a finding against Plaintiff.  Dkt No. 1 at 12 ¶ 22; Dkt No. 21-2 at 7-8 ¶¶ 27-29.  Defendant Reed cites logistical considerations as the reason for the postponement, and also Defendant Reed determined that a witness Plaintiff asked to call[17] did not have information within the scope of the facts at issue.  Dkt No. 15-5 at 2-3 ¶¶ 6-8.

---

[15]  The "602 against Zavala" refers to the grievance Plaintiff instituted regarding these events.  *See* Cal. Code Regs. Tit. 14, § 3482(c) (inmates may submit grievances by utilizing Form 602-1).  Dkt No. 15 at 13.  The grievance was separately decided by Defendant Mensing.

[16]  When questioned as to how Defendant Reed knew of Plaintiff's grievance, Plaintiff suggested to "Go ask her."  Dkt No. 21-2 at 82.

[17]  The witness in question was a correctional officer identified as "Officer P. Martinez."  Dkt No. 15-7 at 13.  Plaintiff has not explained what information Officer P. Martinez might have provided to Defendant Reed, nor why any failure to obtain Officer P. Martinez's testimony would be evidence of retaliatory motive on the part of Defendant Reed.  According to the record of the RVR hearing, Defendant Reed asked Plaintiff whether Officer P. Martinez was present at the cell during the interaction between Plaintiff and Defendant Zavala.  Dkt No. 15-7 at 14.  Plaintiff responded "No."  *Id*.  This led Defendant Reed to determine that Officer P. Martinez could not provide relevant information.  *Id*.
   Plaintiff also requested testimony from Prison Librarian Martinez.  *Id*. at 13.  Defendant Reed denied this request as well, on the grounds that Plaintiff's proposed line of questioning for Martinez was not relevant to the specific RVR charge.  *Id*.  Even though Defendant Reed did not call Martinez to the hearing, Defendant Reed had access to Martinez's written Supplemental Report in the record of the RVR.  *Id*. at 8.

Defendant Reed concluded that the evidence was insufficient to support a charge of "Disrespect with Potential for Violence/Disruption," but was sufficient to support a charge of "Disrespect without the Potential for Violence."  Dkt No. 15-7 at 16.  Defendant Reed's decision was entered on November 18, 2020.  *Id*. at 19.

### C.   Defendant Mensing

Meanwhile, on November 4, 2020, Defendant Mensing, in the role of Acting Chief Deputy Warden, denied Plaintiff's grievance regarding these events.  Dkt No. 15-4 at 2; Dkt No. 15-7 at 23.  Defendant Mensing declares the grievance denial was based on an internal inquiry conducted by Allegation Inquiry Management Section staff.  Dkt No. 15-4 at 2 ¶ 5.  Defendant Mensing denies being aware of Plaintiff's pending lawsuit against Defendant Zavala.  *Id*.  Plaintiff counters that his grievance itself referred to the lawsuit. Dkt No. 21-2 at 9 ¶ 36.

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue

United States District Court
Northern District of California

United States District Court
Northern District of California

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id*. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).  The court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. *L.F. v. Lake Washington School District*, 947 F.3d 621, 625 (9th Cir. 2020).

### A.   <u>Excessive Force Claim</u>

Whenever prison officials stand accused of using excessive force in violation of the

Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)).  In making this determination, a court may evaluate the need for application of force; the relationship between that need and the amount of force used; the extent of any injury inflicted; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response.  *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

A significant injury is not a threshold requirement for stating an excessive force claim.  *Hudson*, 503 U.S. at 7.  Whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation is contextual and responsive to contemporary standards of decency.  *Id*. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Contemporary standards of decency are always violated when prison officials maliciously and sadistically use force to cause harm "whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  *Id*. at 9; *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991) (it is not degree of injury which makes out violation of Eighth Amendment but use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity).

This is not to say that the "absence of serious injury" is not relevant to the Eighth Amendment inquiry.  *Hudson*, 503 U.S. at 7.  The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could possibly have been thought necessary in a particular situation.  *Id*.  The extent of injury may also provide some indication of the amount of force applied.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  But not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Hudson*, 503 U.S. at 9.  The Eighth Amendment's prohibition of cruel and unusual

punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.  *Id*.  An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.  *Id*.  Injury and force are only imperfectly correlated, and it is the latter that ultimately counts.  *Wilkins*, 559 U.S. at 38.

Reading this record in the light most favorable to Plaintiff, the force applied by Defendant Zavala consisted of elbowing Plaintiff in his back while handcuffing him, making the handcuffs extremely tight, unnecessarily making Plaintiff wait in handcuffs, and repeatedly and unnecessarily jerking Plaintiff's hands upward while accompanying Plaintiff to the holding cell.  Dkt No. 1 at 10 ¶¶ 14, 15; Dkt. No. 21-2 at 3 ¶¶ 8-10; Dkt No. 21-1 at 2 ¶ 6.  Defendants have failed to refute Plaintiff's allegations with specific facts that show an absence of any genuine issue regarding whether Defendant Zavala used excessive force according to the criteria in *Hudson*.

The need for Defendant Zavala's application of force is disputed in several respects, including as to whether Plaintiff acted aggressively when Defendant Zavala and Martinez entered his cell, or was instead attempting to provide Martinez with information about his PLU request.  Plaintiff and Jones submit that Plaintiff was not resisting Defendant Zavala, but that he did attempt to hand off a folder (containing the relevant Court order) to Martinez.  Their accounts cast doubt on whether Defendant Zavala had reason to apply additional force such as elbowing or jerking.  The relatively minor nature of Plaintiff's injuries is not determinative given the evidence Defendant Zavala might have intended to apply force unnecessarily or might have manufactured a pretext for her use of force.[18] Plaintiff's version is at least partially corroborated by Jones's assertion that he witnessed

---

[18]  Defendants do not address Plaintiff's argument that Defendant Zavala has a pattern of manufacturing pretext for use of force against prisoners who have lawsuits against her. Dkt No. 21-2 at 4-5 ¶15.

Plaintiff attempt to hand a folder to Martinez, and saw Defendant Zavala elbowing Plaintiff's back. Defendant Zavala's denials are insufficient to decisively counter the material factual issues raised in the declarations of Plaintiff and Jones, and Martinez's actual presence and ability to attest to Defendant Zavala's actions is itself called into question.

Because so many of the circumstances surrounding Defendant Zavala's use of force, and the events leading up to it, are disputed, the Court finds that it cannot make a determination as a matter of law that Defendant Zavala's use of force was either made in a good-faith effort to maintain or restore discipline, or that it was done maliciously and sadistically to cause harm. *See Whitley*, 475 U.S. at 320-21.

Accordingly, the Court must deny summary judgment as to Plaintiff's Eighth Amendment excessive force claim against Defendant Zavala.

## B. Retaliation Claims

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor

for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The prisoner also bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose, *see Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

### 1.    <u>Retaliation Claim against Defendant Zavala</u>

Plaintiff maintains his pending lawsuit was "the motivating factor" for Defendant Zavala to use excessive force and to file an RVR. Dkt No. 21-2 at 4 ¶ 12. For the reasons below, Defendants' motion for summary judgment is denied as to the retaliation claim against Defendant Zavala.

As to the first element of the retaliation claim, Defendants argue that Defendant Zavala's use of force was not an adverse action because Defendant Zavala only used reasonable force that was justified by Plaintiff's aggressive actions. Dkt No. 15 at 21. As discussed in the previous section, the Court's analysis is that genuine issues of material fact preclude the Court from entering summary judgment on Plaintiff's excessive use of force claim. *See supra* at 12. Defendants do not dispute that filing an RVR is an adverse

action.  *Id*. at 21-23.  Accordingly, the Court must deny summary judgment to the extent it is based on Plaintiff's failure to fulfill the first element of a retaliation claim against Defendant Zavala.

As to the second element of the retaliation claim, Defendants argue that Plaintiff has no direct or circumstantial evidence of retaliatory motive other than his own unsubstantiated testimony.  *Id*. at 22.  Defendants cite *Quiroz v. Short*, 85 F.Supp.3d 1092, 1100 (N.D. Ca. 2015), for the three general types of circumstantial evidence of motive.  *Id*. at 22-23.  These are "(1) proximity in time between the protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse … action were false and pretextual."  *Id*. (internal quotation marks and citation omitted).

Defendants' argument is not wholly supported by the record.  Plaintiff, Defendant Zavala, and Martinez all agree that Plaintiff stated at the outset of their encounter that the reason for his PLU application was his '3750 lawsuit against Defendant Zavala.  Plaintiff and Jones both maintain that Plaintiff unsuccessfully attempted to give Martinez a folder that, according to Plaintiff, held the Court order from the '3750 lawsuit in support of Plaintiff's PLU request.  Plaintiff maintains Defendant Zavala opted to unjustifiably restrain Plaintiff instead of allowing him to hand the folder to Martinez, and the evidentiary record seems to indicate that the folder was not actually transferred to Martinez.  Plaintiff's account is at least partially corroborated by Jones, and is not entirely contradicted by Defendant Zavala and Martinez.

Retaliatory motive might be inferred if it is ultimately found that Defendant Zavala stopped Plaintiff from relaying to Martinez the documentation necessary for Martinez to approve Plaintiff's PLU status related to the '3750 lawsuit.  The force that Defendant Zavala used to restrain Plaintiff, if it is ultimately found to be excessive, might thereby be found to have retaliatory motive in reaction to, or for the purpose of interfering with, Plaintiff's pursuit of claims against Defendant Zavala in the '3750 lawsuit.  Similar

United States District Court
Northern District of California

motivation might be ascribed to Defendant Zavala's related RVR against Plaintiff. Accordingly, the Court must deny summary judgment to the extent it is based on Plaintiff's failure to fulfill the second element of a retaliation claim against Defendant Zavala.

As to the third and fourth elements, Defendants do not dispute whether Plaintiff's pursuit of the '3750 lawsuit against Defendant Zavala, or application for a related PLU, is protected conduct.  Nor do Defendants dispute that interference with obtaining a PLU related to Plaintiff's '3750 lawsuit, or filing a false RVR related to the incident, could be a chilling of Plaintiff's First Amendment rights to pursue the '3750 lawsuit.

As to the final element, Defendants argue that Defendant Zavala had a legitimate correctional goal for filing the RVR,[19] in that: (1) the RVR was not false; (2) there was no nexus between Plaintiff's '3750 lawsuit and Defendant Zavala's decision to file an RVR; and (3) Defendant Zavala's legitimate goal was to preserve institutional order, discipline, and security, and was a response to aggressive behavior by Plaintiff.  Dkt No. 15 at 22-23. In light of the material factual disputes described above, the Court cannot conclusively determine whether Defendant Zavala had a legitimate correctional goal.  Accordingly, the Court must deny summary judgment to the extent it is based on Plaintiff's failure to fulfill the fifth element of a retaliation claim against Defendant Zavala.

Based on the foregoing, Defendant Zavala's motion for summary judgment on the retaliation claim against her must be DENIED for failing to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.

## 2.    Retaliation Claim against Defendant Reed

Plaintiff claims that Defendant Reed's resolution of Defendant Zavala's RVR

---

[19]  Defendants do not explicitly address the legitimate correctional goal for Defendant Zavala's use of force.  Dkt No. 15 at 22.  Defendants argue in their reply brief, that Defendant Zavala's use of force was reasonable according to Defendant Zavala's version of events at the cell, because Plaintiff was not wearing a mask and he called Defendant Zavala a "bitch."  Dkt No. 26 at 2.

against Plaintiff, finding Plaintiff guilty of a lesser charge, was taken in retaliation for Plaintiff's grievance against Defendant Zavala.  Dkt No. 4 at 3; Dkt No. 21-2 at 7-8.  Plaintiff's primary evidence for retaliatory motive is Defendant Reed's alleged statement that Defendant Reed "had to" make some sort of finding of guilt because of the grievance Plaintiff had lodged against Defendant Zavala.  Dkt No. 1 at 12 ¶ 23; Dkt No. 21-2 at 7 ¶ 28.  Defendant Reed denies the statement, and indeed denies knowing that Plaintiff had filed a grievance against Defendant Zavala.  Dkt No. 15-5 at 3 ¶¶ 10, 14.  Plaintiff essentially admits he has no evidence that Defendant Reed knew of Plaintiff's grievance against Defendant Zavala, other than the disputed statement set forth here.  Dkt No. 21-2 at 82.  Plaintiff has failed to meet his burden to designate specific facts showing that there is a genuine issue for trial, on the question whether Defendant Reed took her decision "because of" Plaintiff's grievance against Defendant Zavala.  *See Celotex Corp.*, 477 U.S. at 324; *Rhodes*, 408 F.3d at 567-68; *Keenan*, 91 F.3d at 1279.

Defendant Reed has also given specific reasons in response to Plaintiff's other allegations about re-scheduling the RVR hearing and failing to call Plaintiff's proposed witnesses.  Dkt No. 15-5 at 2-3 ¶¶ 7-9; Dkt No. 15-7 at 13-14.  Plaintiff has not refuted Defendant Reed's explanations with sufficient specificity to create any genuine issue as to whether Defendant Reed manipulated the proceedings in a manner that actually disadvantaged Plaintiff, and that Defendant Reed did so because of Plaintiff's grievance.  Likewise, Plaintiff has not shown any genuine factual issue that might prove that Defendant Reed chilled Plaintiff's exercise of his First Amendment rights, or that Defendant Reed was not reasonably advancing a legitimate correctional goal in her conduct of the hearing and her ultimate decision on the RVR.  *See Celotex Corp.*, 477 U.S. at 324.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine issue as to any material fact relating to Plaintiff's retaliation claim against Defendant Reed.  Plaintiff's allegations are not sufficiently probative to warrant

denial of Defendant Reed's motion for summary judgment.  *See Liberty Lobby*, 477 U.S. at 249-50.  Accordingly, the Court must grant summary judgment in favor of Defendant Reed.  *Id.* at 323.

### 3. Retaliation Claim against Defendant Mensing

Plaintiff claims Defendant Mensing's denial of Plaintiff's grievance appeal was retaliatory action taken because of Plaintiff's '3750 lawsuit against Defendant Zavala.  Dkt No. 4 at 3; Dkt No. 21-2 at 9.  Plaintiff argues Defendant Mensing knew of the '3750 lawsuit because Plaintiff had cited it in the grievance.  Dkt No. 21-2 at 9 ¶ 36 & Exh. Q.  Defendant Mensing denies knowledge of the '3750 lawsuit, and declares he relied on an internal staff inquiry.  Dkt No. 15-4 at 2 ¶ 5.  Plaintiff has advanced no evidence that Defendant Mensing denied Plaintiff's grievance "because of" Mensing's actual or constructive knowledge of the '3750 lawsuit.  *See Celotex Corp.*, 477 U.S. at 324; *Rhodes*, 408 F.3d at 567-68; *Keenan*, 91 F.3d at 1279.

In essence, Plaintiff proposes that any decision-maker having actual or constructive notice of Plaintiff's '3750 lawsuit, and thereafter taking a decision adverse to Plaintiff, should be presumed to have retaliatory motive.  This argument does not satisfy Plaintiff's burden to designate specific facts showing a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324.  Plaintiff similarly fails to show genuine issues as to other elements of his retaliation claim against Defendant Mensing, including whether Defendant Mensing's grievance denial chilled Plaintiff's First Amendment rights or failed to reasonably advance a legitimate correctional goal.  *See Rhodes*, 408 F.3d at 567-68.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine issue as to any material fact relating to Plaintiff's retaliation claim against Defendant Mensing.  Accordingly, the Court will grant summary judgment in favor of Defendant Mensing.

### C. Qualified Immunity

Defendants assert in the alternative that they are entitled to qualified immunity from

18

liability for civil damages.  Dkt No. 15-2 at 25.  Because the Court will grant summary judgment on Plaintiff's claims against Defendants Reed and Mensing, Defendants' qualified immunity argument is addressed only as to Defendant Zavala.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right."  *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority."  *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2020) (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. *White v. Pauly*, 580 U.S. 73, 80 (2017).

The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis. *See Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003). Thus, a guard can do an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was a good faith effort to restore discipline. *See id.* at 692-93 (guard who shot passive, unarmed inmate standing near a fight between other unarmed inmates when no inmate was in danger of great bodily injury would inflict unnecessary and wanton pain, but was entitled to qualified immunity because a reasonable official standing where the guard was standing (i.e., in a tower 360 feet away from the disturbance) could perceive that both plaintiff and another inmate were kicking a third inmate and threatening him with serious injury or death and that the third inmate was unable to protect himself – even if no

kick was actually administered by plaintiff).  Qualified immunity was denied on an excessive force claim because a prison official could not reasonably believe his conduct lawful in *Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendant Zavala is not entitled to qualified immunity on Plaintiff's excessive force claim. First of all, Plaintiff has clearly alleged the deprivation of an actual constitutional right, *i.e.*, an Eighth Amendment right to be protected from excessive force by correctional staff that is not applied in a good faith effort to restore discipline, as perceived by a reasonable officer.  *See Marquez*, 322 F.3d at 692-93.  Secondly, Defendant Zavala has failed to establish that her actions were reasonable.  Viewing the evidence in the light most favorable to Plaintiff, Defendant Zavala is alleged to have manufactured a pretext to restrain Plaintiff.  A reasonable officer would not have perceived such a restraint as a good faith effort to restore discipline.  At the time of this alleged conduct, it was sufficiently clear that a reasonable official would have understood she has a duty to avoid excessive force that is not in good faith necessary to restore discipline.  *Id*.  In other words, in light of clearly established principles at the time of the incident, it cannot be said that Defendant Zavala could have reasonably believed that her conduct was lawful.  *See Watts*, 394 F.3d at 712-13.  Furthermore, Defendant Zavala denies creating a pretext for her use of force, so it cannot even be argued that she acted with a mistaken belief that her conduct was reasonable.

In considering whether a defendant is entitled to qualified immunity against a retaliation claim, it is improper to consider the harm eventually caused by the official's conduct.  *Rhodes v. Robinson*, 408 F.3d 559, 569-70 (9th Cir. 2005).  The qualified immunity inquiry must focus on the time of the conduct –  i.e., whether the officer's acts were reasonable in light of the information he possessed at the time he acted – rather than

United States District Court
Northern District of California

its aftermath and effect because no officer can observe whether his retaliation has successfully chilled a prisoner's rights until long after deciding to act. *Id.* at 570; *Ballentine v. Tucker*, 28 F.4th 54, 59 (9th Cir. 2022) (finding officer not entitled to qualified immunity because it was clearly established that an arrest supported by probable cause but made in retaliation for protected speech violates the First Amendment).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendant Zavala is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. First, Plaintiff has clearly alleged the deprivation of his constitutional right to pursue civil litigation, in this instance by applying for PLU status related to the '3750 lawsuit. It is well established that a prisoner cannot be retaliated against for exercising his right to pursue civil litigation. *Entler v. Gregoire*, 872 F.3d 1031, 1041 (9th Cir. 2017). Second, Defendant Zavala has failed to establish that her conduct was reasonable. Viewing the evidence in the light most favorable to Plaintiff, Defendant Zavala is alleged to have prevented Plaintiff from giving the librarian the documentation to support the request for PLU status that Plaintiff needed to pursue his civil lawsuit against Defendant Zavala. Defendant Zavala is also alleged to have filed a false RVR out of retaliatory animus for Plaintiff's lawsuit. A reasonable officer would not have perceived such actions as reasonable. Accordingly, at the time of Defendant Zavala's alleged conduct, Defendant Zavala could not have reasonably believed that her conduct was lawful. *Entler*, 872 F.3d at 1041.

Based on the foregoing, Defendant Zavala's motion based on qualified immunity is DENIED.

### D.   Punitive Damages Request

Defendants argue that Plaintiff's request for punitive damages should be dismissed because Plaintiff has shown no evidence of evil motive or intent or reckless and callous indifference. Dkt No. 15 at 27; Dkt No. 26 at 9. This argument relies on the Court accepting Defendants' version of the relevant events. Viewing the record in the light most

United States District Court
Northern District of California

favorable to Plaintiff, there remains a triable issue on the claims remaining against Defendant Zavala, i.e., as to whether Defendant Zavala exhibited reckless and callous indifference to Plaintiff's federally protect rights under the Eighth and First Amendments.

Accordingly, the Court DENIES Defendants' motion to dismiss the request for punitive damages.

### III.   <u>Referring Case to Settlement Proceedings</u>

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement.  In light of the existence of triable issues of fact as to whether Defendant Zavala violated Plaintiff's rights under the First and Eighth Amendments, the Court finds the instant matter suitable for settlement proceedings.  Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

### CONCLUSION

For the reasons stated above, the Court orders as follows:

1.      Defendant Zavala's motion for summary judgment is **DENIED**.  Dkt No. 15. Plaintiff's Eighth Amendment excessive use of force claim and First Amendment retaliation claim remain against Defendant Zavala.

2.      Defendants' motion for summary judgment with respect to the claims against Defendants Reed and Defendant Mensing is **GRANTED**.  *Id.*   There remaining no claims against them, the Clerks shall terminate these Defendants from this action.

3.      Plaintiff's application to file a sur-reply is **GRANTED**.  Dkt No. 27.

4.      The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim in this action against Defendant Zavala, as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and

United States District Court
Northern District of California

date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

5.      Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement proceedings.

6.      The Clerk shall send a copy of this order to Magistrate Judge Illman in Eureka, California.

This order terminates Docket Nos. 15 and 27.

**IT IS SO ORDERED.**

**Dated:   __February 27, 2023____**

BETH LABSON FREEMAN
United States District Judge

Order Denying Def.'s MSJ; Refer to Settlement
PRO-SE\BLF\CR.21\03426Smith_deny-msj&refer.Illman